```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                     DISTRICT OF VERMONT


MAR-RAE X. TERINO                  :
        Plaintiff,                 :
                                   :
        v.                         :   Case No. 2:15-cv-00143
                                   :
THE WOODSTOCK RESORT CORP.         :
and WTS INTERNATIONAL INC.,        :
                                   :
        Defendants.                :
```

**OPINION AND ORDER**

**Introduction**

Plantiff Mar-Rae Terino brought this action against her former employer, WTS International Inc. ("WTS"), and the owner and operator of her former place of employment, The Woodstock Resort Corporation. Terino's amended complaint alleged fourteen causes of action. ECF 24. After Defendants filed their motions for summary judgment, however, Plaintiff withdrew eight of these claims. On June 28, 2017, the Court granted summary judgment in favor of Defendants on Plaintiff's remaining claims, including her claim for (1) interference with leave rights under Vermont's Parental Family Leave Act ("PFLA") (count one); (2) disability discrimination under Vermont's Fair Employment Practices Act (count four); (3) retaliation for disability discrimination complaints under Vermont's Fair Employment Practices Act ("FEPA") (count five); (4) retaliation for filing a workers

compensation claim (count six); (5) unpaid wages under FEPA (count eleven); and (6) unjust enrichment (count twelve). ECF 66. Plaintiff subsequently filed a motion seeking reconsideration of the Court's order with respect to her claims for (1) interference with PFLA rights; (2) disability discrimination under FEPA; (3) retaliation for disability discrimination complaints under FEPA; and (4) retaliation for filing a workers' compensation claim. For the reasons described below, the Court **denies** Plaintiff's motion. Nevertheless, the Court takes the opportunity to correct a factual error which, even upon reconsideration, would not alter the outcome of the Court's opinion.

## Standard of Review

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to move the Court to alter or amend a judgment within 28 days after judgment is entered. A motion to alter or amend judgment may be granted to "correct a clear error or prevent manifest injustice." *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999) (internal quotation omitted). However, such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the

court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995); *see also Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 472 (S.D.N.Y. 1996). "[W]here the moving party seeks to relitigate issues already considered thoroughly by the court," the motion should be denied. *Chet's Shoes, Inc. v. Kastner*, 710 F. Supp. 2d 436, 454 (D. Vt. 2010), *aff'd,* 449 F. App'x 37 (Fed. Cir. 2011). If the moving party cannot point to overlooked, controlling decisions or factual matters, or clear error or manifest injustice, the disagreement must be resolved "in the normal appellate process." *Id.* (internal quotations omitted) (citing *NL Indus., Inc. v. Comm'l Union Ins. Cos.*, 938 F.Supp. 248, 250 (D.N.J.1996)).

**Discussion**

For purposes of this discussion, the Court presumes the reader's familiarity with the facts adduced in discovery, outlined more fully in the Court's summary judgment order. ECF 66. After evaluating Plaintiff's arguments, the Court finds that Plaintiff has failed to identify controlling decisions or data that would alter its conclusions.

1.  *Interference with Medical Leave under the PFLA*

Plaintiff raises four arguments in support of her assertion that the Court erred in dismissing her claim for interference

3

with her PFLA rights. First, she points to an investigative report from the Vermont Human Rights Commission which applied the standard for an interference claim under the federal Family and Medical Leave Act ("FMLA") to a claim under the state PFLA, without discussing why such a claim would be permissible under the language of the PFLA. *See Thissell*, Vermont HRC Case No. E16-0004 (Jan. 28, 2016) (investigative report). The Human Rights Commission later held that there were reasonable grounds to believe that the employer in that case had interfered with the complainant's PFLA rights, without discussing the legal standard employed or the factual issues in dispute. Next, Plaintiff reiterates her argument that the Court must construe the language of the state statute to provide for an interference claim. Third, Plaintiff asserts that she alleged restrictions on her time during her on-call hours, without providing any further legal argument about why that time is compensable. Finally, Plaintiff asserts that, under Vermont law, the Court was required to consider her affidavit concerning uncompensated hours, despite her prior deposition testimony stating that she could not estimate those hours. None of these arguments withstand scrutiny.

First, the investigator's report, which applied the federal standard for an interference claim to the PFLA without

discussion of its applicability under state law, does not provide a binding interpretation the scope of the PFLA. In fact, Plaintiff does not set forth a cogent legal argument about the weight of this authority at all, other than to contend that "the Vermont Supreme Court would agree or [sic] that this issue needs to be decided by the high court." ECF 68, p. 3.[1] Nor could this Court find authority to suggest that a contrary conclusion offered without discussion by an administrative agency would weigh on the Vermont Supreme Court's willingness or desire to take on a certified question.[2] Moreover, while Vermont courts do grant deference to the legal interpretations of administrative agencies, those conclusions are still subject to judicial review. *See State v. Grenier,* 198 Vt. 55, 67 (2014) ("We employ a deferential standard of review of an agency's interpretation

---

[1] In her reply, Plaintiff implies that because the Vermont Supreme Court has ruled in favor of employees on certain questions where federal courts had previously ruled in favor of employers, this Court should certify the case to state court. *See* ECF 71, p. 2-3 (citing *Sargent v. Columbia Forest Products, Inc.*, 75 F.3d 86 (2d Cir. 1996); *Egri v. U.S. Airways, Inc.,* 174 Vt. 443 (2002)). However, the cases Plaintiff cites do not deal with the PFLA, and Plaintiff makes no effort to discuss any particular legal issue in those cases that pertains to the legal question in this case. As such, Plaintiff's reference is unpersuasive.

[2] The absence of such authority presumably stems from the fact that federal courts, not the state court, initially determine whether or not to certify a question for resolution. However, in reply, Plaintiff notes the federal standard for determining when certification is appropriate, without explaining how these criteria apply to the case at hand. *See* ECF 71, p. 3; *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 505 (2d Cir. 2004) ("We have deemed certification appropriate where state law is not clear and state courts have had little opportunity to interpret it, where an unsettled question of state law raises important issues of public policy, where the question is likely to recur, and where the result may significantly impact a highly regulated industry.") (internal citations and quotations omitted). Here, the Court finds that state law is not sufficiently unclear to warrant certification.

of its own regulations, and the presumption that an agency's interpretation is valid may be overcome only by compelling indications of error.") (internal quotations omitted); *In re Vill. Assocs. Act 250 Land Use Permit*, 188 Vt. 113, 119 (2010)("where we are not reviewing a decision by an agency charged with promulgating and interpreting its own rules, we employ the familiar de novo standard of review for matters of law."). Thus, regardless of the standard of review to be employed to the determination in *Thissell*, it is clear that the Human Rights Commission's conclusory application of a different standard is not binding on this Court. Nor does the investigative report in *Thissell* make state law so uncertain that the Court could not make a reasonable prediction based on statutory construction, given the dearth of analysis contained therein.

In fact, immediately following her reference to *Thissell*, Plaintiff argues that this Court should engage in statutory construction to reach a different conclusion. This argument, too, is unavailing. In particular, Plaintiff asserts that the PFLA and the FMLA contain parallel language –namely, they both prohibit retaliatory conduct for a party's *attempt* to exercise his or her rights under those laws –and that this language should lead the Court to reason that similar claims are

contemplated by both laws. But that argument ignores an obvious difference between the two statutes: the FMLA expressly makes it unlawful for an employer "to interfere with" such an attempt, while the PFLA does not. *See* 29 U.S.C. § 2615(a)(1); 21 V.S.A. § 473. The Vermont statute, therefore cannot be described as merely "combining ... into one section" two separate provisions of federal law, as Plaintiff claims. As such, the Court sees no reason to depart from its prior conclusion on this question of statutory construction.[3]

Since the law does not contemplate an interference claim to begin with, the Court need not delve into the specific facts Plaintiff references concerning the restrictions she faced during on-call hours. Nevertheless, the Court notes that the facts Plaintiff points to in her motion were available at the time of the summary judgment opinion, and were contemplated by the Court at the time. As in her first briefing on this question, Plaintiff makes no attempt to argue that the relevant facts warrant a conclusion that her on-call time was compensable. *See Singh v. City of N.Y.*, 524 F.3d 361, 368 (2d Cir. 2008) ("whether an employee's expenditure of time is

---

[3] Finally, in her reply, Plaintiff makes an additional argument concerning the "irrational result" of construing the statute narrowly. However, the fact that some forms of prejudicial employer conduct would not be proscribed by the PFLA does not provide sufficient reason to interpret the law differently when a comparison of the state and federal statutes supports the Court's conclusion.

considered work under the FLSA turns in part on whether that time is spent predominantly for the benefit of the employer or the employee"). In fact, Plaintiff's brief fails to include a single reference to the applicable legal standard for compensable work time. Having undertaken this effort of its own initiative once, the Court sees no reason to upset its prior analysis.

Finally, since interference claims are unavailable under the PFLA, the Court need not consider the evidentiary question of whether the Plaintiff may contradict her own, uncorrected deposition testimony by preparing an affidavit for purposes of summary judgment. Nevertheless, even if it did, Plaintiff's reference to Vermont law is unavailing in this case. *See* ECF 68 (citing *Northern Security Insurance Company v. Mary L. Joseph and Anthony Rossitto,* 762 A.2d 861, 893 (Vt. 2000)). Although this Court must apply state substantive law to a state law claim, federal law continues to guide procedural determinations. *See Retained Realty, Inc. v. McCabe*, 376 Fed. Appx. 52, 55 (2d Cir. 2010) (summary order) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). The Federal Rules of Civil Procedure provide express guidance to this Court

concerning the standard to be applied at summary judgment, including the validity of affidavits submitted as evidence at this stage. *See* Fed. R. Civ. P. 56. Therefore, the Court must apply these rules, as interpreted by the Supreme Court, to resolve the evidentiary dispute at issue here. *See Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (holding that if a federal rule applies, the court need "not wade into *Erie's* murky waters.")(quoting *Shady Grove Orthopedic Associates, P.A*, 559 U.S. at 398). As such, to the extent that Vermont law would provide a more lenient standard for evaluating the evidence presented for summary judgment, the Court need not apply that standard here.

Furthermore, Plaintiff's reference to *Gage v. Rymes Heating Oils, Inc.*, Case No. 14-CV-480-PB, 2016 WL 843262, at *6 (D.N.H. Mar. 1, 2016) is inapposite. In that case, the Court addressed whether an admission made in a deposition would amount to the "functional equivalent of an admission under Rule 36" of the Federal Rules of Civil Procedure. *Id.* The Court concluded that it was not. That question, however, is entirely distinct from the situation at hand, in which the Court must determine what evidence suffices to create a material dispute of fact. As the Court stated in its prior order, the Second Circuit has directly addressed that question. *See Bickerstaff v. Vassar Coll.*, 196

F.3d 435, 455 (2d Cir. 1999) ("[i]t is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony."). Accordingly, the Court finds no reason to upset its prior ruling on this question, either.

2. *Disability Discrimination under FEPA*

Plaintiff also requests that this Court "reconsider its finding that [(1)] Defendants did not fail to engage in the interactive process and [(2)] that their failure to accommodate her request to apprentice another employee was justified because she had not done i[t] before and it amounted to asking her to recreate a new position." ECF 68, p. 8. Plaintiff made each of these arguments previously, based on identical facts. With respect to the first argument, Plaintiff disregards the clear conclusion of the very case she cites: that although an employer should conduct an individualized inquiry to determine the appropriate accommodation, "there is no authority imposing liability for failure to conduct an adequate inquiry." *State v. G.S. Blodgett Co.*, 163 Vt. 175, 184 (1995); *see also McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 101 (2d Cir. 2009) ("The employer's failure to engage in such an interactive process, however, does not relieve a plaintiff of her burden of

10

demonstrating, following discovery, that some accommodation of her disability was possible."). Thus, the Court did not err in failing to hold Defendants liable, even if their extensive back and forth with Plaintiff concerning her shifting scheduling needs were deemed to be insufficient.

Second, there is no dispute of fact that Plaintiff did not, in fact, begin to apprentice her coworker, April, before the injury. Although Adams testified that she and Plaintiff intended to determine an apprentice schedule just before the injury, she did not state that the apprenticeship had actually begun before Plaintiff took leave (even according to the quote cited in Plaintiff's motion). *See* ECF 68 at 9 (citing ECF 54-20, p. 15).[4] Rather, Adams testified that WTS "didn't have April start apprenticing before Mar-Rae was injured." *Id.* Moreover, Plaintiff does not dispute that she acknowledged that her apprenticeship had not actually begun prior to her taking leave. Since the apprenticeship was not an essential function of Plaintiff's position prior to her injury, her employer's failure

---

[4] In her reply, Plaintiff cites ECF No. 56-6 to support her assertion that "the apprenticeship was something Ms. Terino had done before." ECF 71, p. 3. In that letter, WTS acknowledges that Terino was "an employee that WTS relied on to conduct training of other staff members and she was compensated at a higher hourly rate for training sessions." However, the letter does not state that the apprenticeship in question began prior to Terino's injury, or that conducting such an apprenticeship was an essential function of Terino's job prior to that point. In fact, the letter states that Terino was compensated more for her training of others, while Adams testified that Plaintiff would have earned less per hour apprenticing April. Thus, it is clear that her apprenticeship and training responsibilities were distinct, and not part of a single essential job function.

11

to alter her job duties cannot constitute a failure to provide reasonable accommodations.

*3.  Retaliation for Disability Discrimination Complaints under FEPA*

Next, Plaintiff asserts that because the Court erred in finding that she had not begun to apprentice her coworker prior to becoming injured, it should also reconsider its conclusion with regard to her claim for retaliation for disability discrimination complaints. However, as explained above, the Court finds no new evidence that would alter its judgment on this ground, and a renewed look at the evidence reveals no error in the Court's assessment of these facts.[5] Finally, even if Plaintiff were able to demonstrate that she was deprived of a task that was previously a component of her work, she has not presented facts or arguments to contradict the Court's prior conclusion that no causal connection between the loss of apprenticeship opportunity and her alleged protected activity could exist because of the sequencing of these events. Accordingly, Plaintiff's motion for reconsideration on this ground is also denied.

---

[5] Although she failed to raise the issue in her initial motion, Plaintiff also re-hashes the facts underlying the Court's determination that she did not suffer other, alternative adverse employment actions in her reply brief. ECF 71, p. 5-8. The Court need not re-assess these facts at this stage, because Plaintiff did not dispute the Court's conclusion that there was no causal connection between these alleged adverse employment actions and her alleged protected activity. Rather, the only argument Plaintiff made in reply concerns the causal connection between these adverse employment action and her filing of a workers compensation claim.

12

*4.   Retaliation for Filing a Workers Compensation Claim*

Plaintiff accurately points out an error in the Court's assessment of the facts with regard to her claim for retaliation for filing a workers' compensation claim. Although Plaintiff did not raise a dispute about her workers' compensation award until sometime after her injury, her first report of injury in connection with her workers' compensation claim was filed on January 30, 2012. *Id.* at p. 32. Filing an initial report of injury with a workers' compensation insurance company constitutes a protected activity, and the sequencing of this and the alleged adverse action is sufficient to create a causal connection for purposes of surviving summary judgment. *Murray v. St. Michael's Coll.*, 164 Vt. 205, 212, 667 A.2d 294, 300 (1995) ("The timing of the alleged actions against plaintiff, relative to his filing of the workers' compensation claim, is a sufficient showing, for purposes of surviving summary judgment, of a causal connection between the protected activity and the adverse employment decisions.").

That fact, however, does not alter the Court's conclusion on this count, because Plaintiff has failed to show that Defendants' proffered reasons for the adverse actions (in this case, her loss of health insurance benefits and the reversal of WTS' decision to allow her to apprentice her coworker) were

13

pretextual.[6] In her initial motion, Plaintiff offered no specific facts to dispute the Court's prior conclusion on this point. In reply, she argues that Defendants did not comply with their own policy in changing her employment status from part-time to full-time, which led to her loss of health benefits. However, she does not claim that she was entitled to have full-time status, and therefore to retain her health benefits. As such, Plaintiff's argument that such the loss of full-time status was a pretext for discrimination is unpersuasive. Furthermore, Plaintiff contends, yet again, that her bosses contradicted themselves about when the apprenticeship began. The Court, however, reviewed and assessed the very evidence that Plaintiff pointed to in its initial motion, and in fact, both witnesses expressed reservations about knowing the exact date in the testimony Plaintiff cites. Similarly Plaintiff has not pointed to new facts to support her contention that Adams and D'Hooghe's explanations for why she was unable to begin an apprenticeship were necessarily contradictory. In particular, Adams clarified that her concern with commencing the apprenticeship while Plaintiff's time was limited centered primarily on ensuring that

---

[6] Although Plaintiff failed to challenge the Court's determination about which of WTS' decisions constituted adverse actions in her initial motion, she re-raises facts previously available to the Court in her reply. Since Plaintiff fails to point out any particular factual or legal error in the Court's prior decision on this question, the Court finds that these arguments are merely an attempt to "relitigate issues already considered thoroughly by the court." *Chet's Shoes, Inc.*, 710 F. Supp. 2d at 454 (D. Vt. 2010). As such, the Court will deny the motion insofar as it relies on allegations that additional types of conduct constituted adverse employment actions.

Plaintiff's limited work hours went to working with clients. *See* ECF 54-20, p. 55. D'Hooghe did not contradict this testimony about the root of the scheduling challenge, and testified that she did not remember the exact conversation with Adams about whether an apprenticeship required the participating employee to be full-time. *See* ECF 15-21, p. 35.  Moreover, Adams testified that Plaintiff's ability to engage in the apprenticeship was limited by her inability to do pedicures, an explanation that Plaintiff doesn't challenge at all. ECF 54-20, o. 16. Thus, Plaintiff has not pointed to factual or legal errors showing that material disputes of facts exist about whether the proffered explanations were pretext.

Finally, Plaintiff points to her bosses' expressions of "animus" against her and their "lack of enthusiasm or recollection about the apprenticeship" as grounds for harboring "suspicion" that Defendants' proffered explanations were genuine. These allegations about Defendants' emotional states, however, do not call into question the consistency of the explanations Plaintiff's employer offered for conduct she challenges. As such, the Court denies Plaintiff's motion on this claim, as well.

## Conclusion

For the foregoing reasons, the Court hereby **denies** Plaintiff's motion for reconsideration. ECF 68.

Dated at Burlington, in the District of Vermont, this 2nd day of August, 2017.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
